PRESCOTT & NORTHWESTERN RAILWAY COMPANY v MORRIS.

Opinion delivered November 29, 1909.

CARRIERS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—Where the undisputed evidence showed that the engineer set the brakes on his engine so taut that when the other cars in the train moved back, taking out the slack, the engine could not move with them, and that this caused the

coupling link to break, and the cars began to move on a down grade, there being no one on the cars to set the brakes, whereupon plaintiff in fright attempted to leave the moving train and was injured, *held,* that the railway company's negligence was established, and that the jury were warranted in finding that there was no contributory negligence on plaintiff's part.

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 1st day of February, 1908, appellee boarded the log train of appellant at Blevins, Arkansas. To the log train was attached a coach for passengers. The train consisted of ten or twelve cars, some of them loaded with logs. There were as many as two or more cars of logs next to the passenger coach. It was a heavy load. It was after dark. There were no lights on the coach when appellee boarded it. The train had run past the station half a length, and the conductor, who was on the platform of the station, signalled the engineer to run the train back, so that some trunks could be taken on. From Blevins to the Ozan bottoms there was a down grade in the track. As the engineer put the air on, a little slack ran back, and when the brakes were put on, a link coupling the cars about midway the train broke. The coach and two log cars and other cars immediately began to roll down the grade towards Ozan bottom. Some one at this time passed through the car and said: "The coach has broken loose, and is going into the Ozan bottom." The passengers began leaving the train, and all left it. The appellee was the last to leave the car. He was a cripple, having a stiff leg, and said he was afraid to get in the aisle until the others all passed out, fearing they would run over him. The train had run something like sixty or seventy-five yards, and was slowing up some when appellee jumped off. It had been running at a speed of about two or three miles per hour. Appellee jumped from the train, fell backwards and dislocated the last bone on his spinal column, which caused him much pain, and was a serious injury. The coach and cars attached to it ran back down the grade about one hundred or one hundred and fifty yards before it was stopped. It had gone one hundred and fifty feet when appellee jumped off. Appellee says: "We

all got off.  We were afraid to risk ourselves any further with it."  The evidence showed that some one threw chunks under the wheels, but it did not stop for that.  It was finally stopped by some one setting the brakes on the back cars next to the coach. The engineer when he stopped the engine at the station that night "ran up there and applied the brakes."  One witness testified that if an engine was stopped on the top of that hill there and the brakes applied so as to hold the engine steady, as the train went back taking the slack out, it would cause a greater strain on the links or pins than if the brakes were not applied with so much force.  The chunks thrown under the wheels alone would not stop a train going at the rate of speed the coach and cars were going that night without wrecking it.  The brakeman whose duty it was that night to set the brakes on the train had gone off after the mail.  If he had been there and had set the brakes on the coach, it might not have broken loose and run backwards at all.  A witness stopped it by setting the brakes.

The above are substantially the facts presented by this record.

Appellee alleged that "the engineer and those in charge of the train negligently stopped said engine by putting on the emergency brakes or put the brakes on the engine with such force as to hold the engine and not allow it to move; that the train consisted of several cars of saw logs and perhaps other cars, and that said train began to move backward down the grade, taking out the slack, said engine remaining stationary with such force, caused the link or pin to break, letting the train loose from the engine."

All material allegations were denied, and contributory negligence was set up in defense.  The appellant complains of the following instructions given by the court:  "You are instructed that if you find from the evidence that the plaintiff boarded defendant's train as a passenger at Blevins, as alleged in his complaint, and that the train came uncoupled, or broke loose from the engine, and the car on which the plaintiff was riding was going backward, uncontrolled, toward the Ozan bottom, and in an effort to avoid the peril or injury from a threatened wreck the plaintiff, in the exercise of ordinary care, jumped from the car and was injured, this will make a *prima facie* case of negli-

gence against the defendant, and will be sufficient to cast upon it the burden of proving that it was free from negligence in permitting the engine to become uncoupled or broken loose from under the train, and in permitting the train to get from under the control of the engineer or others in charge of the train, if you find that it did get from under their control.

"2. You are instructed that, as a matter of law, when a passenger, through the negligence of a railroad company, is placed in a situation apparently so perilous as to render it prudent for him to leap from the train, whereby he is injured, he will be entitled to recover damages, although he would not have been hurt if he had remained in his seat."

The appellant also complains because the court refused to give an instruction telling the jury that: "It devolves upon the plaintiff to show that his injury, if any, was caused by one of the acts of negligence charged. If you believe from the evidence that the stopping of the engine did not cause the injury or that the engineer exercised due care in stopping the same, then you will, as to this charge, find for the defendant and dismiss this charge from your consideration."

The verdict and judgment were for $350.

*Thos. C. McRae, W. V. Tompkins* and *D. L. McRae,* for appellant.

The injury must be caused by the actual running of the train. 70 Ark. 481. There must have been reasonable cause of alarm caused by the negligence of the company to entitle appellee to recover. 55 Ark. 248.

*J. O. A. Bush,* for appellee.

This is such a case as will raise a presumption of negligence; and the instruction given was based on the evidence as to danger, together with the evidence as to the trainmen losing control of the train. 63 Ark. 636; 33 Ark. 816; 49 Ark. 535; 57 Ark. 136; 80 Ark. 19; 73 Ark. 548; 57 Ark. 418; 55 Ark. 248; 57 Ark. 306.

WOOD, J., (after stating the facts). The first instruction given at the request of appellee submitted to the jury the question as to whether or not appellee jumped from the train in order to avoid the peril or injury of a threatened wreck. We do not

understand the instructions to assume that there was a threatened wreck, and that appellee apprehended peril therefrom, but left that for the jury to determine. There was abundant evidence to warrant the conclusion that a wreck was threatened, and that appellee abandoned the coach because he apprehended danger in remaining thereon. Appellee testified: "We all got off. We were afraid to risk ourselves any further with it." "He was afraid to get in the aisle until the others passed out for fear they would run over him." When some one passed through the car and said: "The coach is broken loose and is going into the Ozan bottom," the passengers began leaving the train, and all left it. The evidence indicates that they left it in a hurry. The train was set free at the top of the grade. There were no lights on the coach. The brakeman whose duty it was to set the brakes had gone. An effort to stop the cars by throwing chunks under the wheels had failed. The cars, two of them, were loaded with logs.

There was no error in allowing the jury, under these circumstances, to determine whether appellee left the train on account of the peril he apprehended from a threatened wreck. The instruction would not be erroneous, even if it assumed that a wreck to the train under such circumstances was threatened. For the evidence was undisputed, and that was the only reasonable conclusion to be drawn from it. The passengers, it appears, did all come to the conclusion that a wreck was threatened, else why should they have abandoned the train in such haste? It was not error to submit to the jury the question as to whether the coach and cars were under the control of the trainmen at the time appellee jumped off. The court might also have assumed that the cars were not under control as an undisputed fact from the evidence. But it is clear from the concluding part of the instruction that the question was submitted to the jury. If the facts existed as recited in the first part of the first instruction, and appellee was injured under circumstances there detailed, the negligence of appellant was established, and the appellant therefore can not complain because the court told the jury that these facts, if proved, make a *prima facie* case of negligence. Appellant was not prejudiced by the instruction in this respect. It was really more favorable to appellant than it had the right to ask.

The undisputed evidence showed that the engineer set the brakes on the engine so taut that when the other cars in the train moved back, taking out the slack, the engine could not move with them, and this caused the link or pin to break. Then when the cars began to roll, there was no one on the train to set the brakes on the moving cars, the brakeman having left his post. These uncontroverted facts proved negligence on the part of appellant, and the jury were warranted in finding that there was no contributory negligence on the part of appellee. The issues were fairly submitted to the jury, when the charge is considered as a whole, and there was evidence to sustain the verdict.

Let the judgment be affirmed.